## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## CENTRAL DIVISION

TERRANCE PROCTOR                                              PLAINTIFF
ADC #087410

V.                            No. 4:20-cv-00847-JM-JTR

ARKANSAS DEPARTMENT OF
CORRECTION; *et al.*                                        DEFENDANTS

## RECOMMENDED DISPOSITION

The following Recommended Disposition has been sent to United States District Judge James M. Moody, Jr. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation.

If you do not file objections, Judge Moody can adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, you may waive the right to appeal questions of fact.

## I.  Introduction

On July 20, 2020, Plaintiff Terrance Proctor ("Proctor"), an inmate at the Varner Supermax Unit ("VSU") of the Arkansas Division of Correction ("ADC")

filed a *pro se* § 1983 Complaint.  On October 20, 2020, Proctor filed an Amended Complaint.[1] *Docs. 1 & 6.*

Proctor has named multiple Defendants, including, by category: (1) Governor Asa Hutchinson; (2) the Arkansas Department of Correction ("ADC"); (3) ADC employees Secretary Wendy Kelley, Chief Deputy Director Dexter Payne, Chief Deputy Director Marshall Dale Reed, Superintendent James Gibson, ADC Records Supervisor Nancy Straughn, and Solomon Graves;  (4) Parole Board Chairman John Felts and Parole Board members Lona McCastlain, Abraham Carpenter, Jerry Riley, Dawn Benafield, John Belken and Andy Shock;  (5) Board of Corrections members Benny Magness, Bobby Glover, Buddy Chadwick, Tyronne Broomfield, William (Dubs) Byer, and Whitney Glass; (6) attorneys Jim DePriest and Christine Cryer; (7) Community Corrections Director Jerry Bradshaw; and (8) John and Jane Does. *Doc. 1.*

Proctor alleges:  (1)  his federal constitutional rights were violated when he was repeatedly denied a parole hearing in 2017, 2018 and 2018; (2) his federal constitutional rights were violated when Governor Hutchinson, with input from the

---

[1] Proctor's Amended Complaint may be read as seeking to also pursue habeas claims under 28 U.S.C. § 2241.  Proctor may *not* pursue relief in one action under 42 U.S.C. § 1983 *and* under § 2241. *See Spencer v. Haynes*, 774 F.3d 467, 470-71 (8th Cir. 2014) (Adopting the view that if a prisoner's "constitutional claim relates to the conditions of his confinement . . . a habeas petition is not the proper claim to remedy his alleged injury," but acknowledging circuit court split on this issue).

Thus, the Court construes Proctor's Complaint and Amended Complaint solely as raising conditions of confinement claims under 42 U.S.C. § 1983.

2

Parole Board and others, denied his request for executive clemency; (3) his rights under state and federal law were violated by the posting of his entire record of major disciplinary violations on the ADC website; (4) DePriest and Cryer, both attorneys, violated their ethical duties by "encouraging the denial" of parole hearings for Proctor; (5) he should be released from prison or placed in home detention because prison officials have denied him a COVID-19 test and are not taking adequate steps to protect him from contracting Covid-19; and (6) the Defendants conspired to violate his federal civil rights. Proctor sues all the individual Defendants in both their individual and official capacities. He seeks declaratory and injunctive relief, compensatory damages, punitive damages, and "immediate release from custody."

For the reasons explained below, the Court recommends that all of Proctor's claims be dismissed.

## II. Discussion

### A.    Parole Related Claims

Proctor's parole-related claims arise from his allegation that, starting in 2017, when Arkansas adopted the Fair Sentencing of Minors Act ("FSMA"), Act 539 of 2017, he was entitled to a parole hearing.[2]

---

[2] Proctor is serving a 240-year aggregate sentence for a string of aggravated robberies he committed at age seventeen. *Proctor v. Hobbs*, 2015 Ark. 42, 2015 WL 603211, *1. Proctor initially received a life imprisonment charge on one of the aggravated robbery charges, followed by a consecutive 200 year term on the remaining convictions. *Id*.
     Following the Supreme Court's decision in *Graham v. Florida*, 560 U.S. 48 (2010), Proctor's life sentence was reduced to a term of 40 years, plus the additional 200 years he received

The issue of whether Arkansas state law entitles Proctor to a parole hearing is currently before the Arkansas Supreme Court. On July 20, 2020, the same day Proctor filed the Complaint in this case, he filed a declaratory judgment action arguing that, having served 37 years for a sentence imposed on him as a juvenile, he was parole eligible under the FSMA after serving 20 years and requesting an immediate parole hearing. *Proctor v. Arkansas Parole Board*, *et al.*, Case No. 60CV-20-3958. On November 18, 2020, Circuit Judge Chris Piazza entered an Order ruling that: (1) the FSMA provisions are retroactive; (2) Proctor is parole-eligible under the FSMA: and (3) Defendants must conduct a parole hearing within 90 days. Defendants appealed the ruling to the Arkansas Supreme Court. As of the date of this Recommendation, the case is still pending, with the Appellants' brief due on March 10, 2021. *Arkansas Parole Board, et al. v. Proctor*, Ark. Sup. Court Case No. CR-21-43. Thus, the Arkansas Supreme Court will have the final say on the FSMA's retroactivity and Proctor's entitlement to a parole hearing.

Even *if*, beginning in 2017, Proctor was entitled to a parole hearing, the denial of a parole hearing itself fails to state a plausible claim for a violation of his constitutional rights. There is no general federal due process right to parole. *See*

---

on the additional convictions. *Proctor v. Hobbs*, 2015 Ark. 42, 2015 WL 603211; *see also Proctor v. Kelley*, 2018 Ark. 382, 562 S.W.3d 837 (rejecting Proctor's habeas challenge, based on *Graham*, to his "de facto life sentence").

*Swarthout v. Cooke*, 131 S. Ct. 859, 862 (2011) (the federal constitution does not

confer a right to be conditionally released before the expiration of a valid sentence).

Additionally, it is well established that the Arkansas parole statutes do *not* create a

federal constitutional right to a grant of parole.[3]  Instead, the Arkansas statutes create

only the *possibility* of parole, which is insufficient to create any due process right,

either substantive or procedural.[4]  Finally, the fact that Proctor *may* have a statutory

right to a parole hearing under state law does not give rise to a federally protected

liberty interest.  *Jenner v. Nikolas*, 828 F.3d 713, 716-17 (8th Cir. 2016) (holding

---

[3]  Arkansas law imposes minimal restrictions on its Parole Board, which "may" release an individual on parole when, in its opinion, there is a reasonable probability that an inmate can be released without detriment to the community or himself.  Ark. Code Ann. § 16-93-701(a)(1).  The Parole Board is also granted discretion to formulate "all policies, rules, and regulations regarding parole," to set conditions for parole, and to determine if or when a particular inmate will be paroled. Ark. Code Ann. §§ 16-93-206(a)(1) & (4), (e)(1) & (f) and 16-93-1302.

[4]  Federal courts have repeatedly held that the Arkansas statutes create only a possibility of parole, and thus do not establish any right to release on parole which would invoke due process protection.  *Pittman v. Gaines*, 905 F.2d 199, 201 (8th Cir. 1990); *Parker v. Corrothers*, 750 F.2d 653, 655-57 (8th Cir. 1984); *Hamilton v. Brownlee*, 237 F. App'x 114, 115 (8th Cir. 2007) (inmate had "no constitutionally protected liberty interest in the possibility" of parole even when board rescinded "an initially favorable parole decision"); *Robinson v. Kelley*, 2015 U.S. Dist. LEXIS 170099, 2015 WL 9311923, at *3-4 (E.D. Ark. Nov. 5, 2015) (no due process claim based on the denial of parole because Arkansas's parole laws do not give a prisoner a right to parole), recommendation adopted 2015 U.S. Dist. LEXIS 171333, 2015 WL 9305675 (E.D. Ark. Dec. 21, 2015); *Crossno v. Hobbs*, 2014 U.S. Dist. LEXIS 151401, 2014 WL 5419979, at *3-4 (E.D. Ark. Oct. 22, 2014) ("[N]either Arkansas law nor the Board's regulations give rise to a liberty interest in parole[.]"); *Sims v. Hobbs*, 2011 U.S. Dist. LEXIS 99561, 2011 WL 3889711, at *2 (E.D. Ark. Sept. 2, 2011) (regardless of statutory provisions using the word "shall," Arkansas's parole statutes "do not establish any right to release on parole or transfer which would invoke due process protection").

that a prisoner's "statutory right to a parole hearing" under South Dakota law did not create a protected liberty interest).

Because Proctor is litigating the issue of his parole eligibility in state court and has failed to plead a plausible constitutional claim arising from the denial of a parole hearing, the Court recommends that those claims be dismissed, without prejudice.

### B.    Clemency Related Claims

On June 23, 20201, Governor Hutchinson denied Proctor's application for executive clemency, based in part on the Parole Board's recommendation. *Doc. 6 at 61*. Proctor has no constitutional right to clemency. *See Perry v. Morgan*, 122 F.3d 18, 20 (8th Cir.1997) (the "Arkansas clemency statute imposes no standards on what the board or the governor may consider in making their decisions," and in such a case, "the statute does not create a constitutional right or entitlement sufficient to invoke the Due Process Clause"); *Wainwright v. Brownlee*, 103 F.3d 708 (8th Cir.1997) (per curiam), and *Whitmore v. Gaines*, 24 F.3d 1032 (8th Cir.1994).

Because Proctor has failed to plead a plausible constitutional claim arising from the denial of clemency, the Court recommends that those claims be dismissed, without prejudice.

### C.    Posting of Disciplinary Record

Proctor alleges that, as of December 2017, a record of the disciplinary rule violations he had received *before* July 1, 2015, were *not* posted on the ADC's website.  However, in 2018, hundreds of disciplinaries had been posted.  As of the date of this Recommendation, the ADC's website lists only six disciplinary violations.[5]

Proctor contends that the posting of his prior disciplinaries violated federal law and a state statute, Ark. Code Ann. § 12-27-145.  There is no federal law that protects state prisoners from having their disciplinary records posted online.

Enacted in 2015, Ark. Code Ann. § 12-27-145 addresses the kind of information that can be posted on the ADC's public website.[6]  Proctor alleges that, he "only" had 80 separate disciplinary incidents, and argues that, under § 12-27-45, the ADC is obligated to post his "disciplinary record" by "disciplinary incident,"

---

[5] *See* https://apps.ark.org/inmate_info/index.php.

[6] It provides, in relevant part:
(a)  To the extent permitted by federal law, the Division of Correction shall post on the Division of Correction's website the following information concerning an inmate:
. . .
(2)(A)  (i) Beginning July 1, 2015, the disciplinary record for each inmate.
         (ii) As used in this subsection, "disciplinary record" means a list of each major disciplinary violation after July 1, 2015, for which the inmate has been found guilty.
      (B)  Additionally, the list and the date of major disciplinary violations for which the inmate was found guilty shall be displayed during the period the inmate is being considered for transfer to parole; . . .
Ark. Code Ann. § 12-27-145 (July 1, 2019).

rather than posting each individual disciplinary voilation that was involved in the overall "disciplinary incident."  According to Proctor, this gave "the appearance [on the website] that there were hundreds of disciplinaries."  *Doc. 6 at 64-71; Doc. 1 at 11-12.*  Ironically, Proctor does *not* dispute that he actually received hundreds of individual disciplinary convictions, and bases his entire challenge on his own self-serving belief that his disciplinary record must be posted by "disciplinary incident" rather than "individual disciplinary convictions."  *Doc. 1 at 28.*

All of Proctor's claims related to his contention that Defendants violated § 12-27-145 are rooted solely in state law, and involve either an allege private cause of action for the statutory violation itself or a remotely actionable common law claim for defamation.[7]  Nothing in the legislative history suggests that Ark. Code Ann. § 12-27-145 was intended to create a private cause of action *on behalf of prisoners*

---

[7] The elements of a state law claim for defamation are:  (1) the defamatory nature of the statement of fact; (2) the statement's identification of or reference to the plaintiff; (3) publication of the statement by the defendant; (4) the defendant's fault in the publication; (5) the statement's falsity; and (6) damages. *Boellner v. Clinical Study Centers, LLC*, 2011 Ark. 83, 17, 378 S.W.3d 745, 757 (2011).  While Proctor suggests the disciplinary violations should have been grouped by the date of the "disciplinary incident," rather than by each individual disciplinary violation, he does not contest receiving all of those disciplinaries.  Nor does he allege that he was *damaged* as a result of the publication of the disciplinary violation.  While he speculates that the disciplinary violations were posted to prevent him from being granted clemency or parole, the Governor and the Parole Board would have had access to Proctor's complete disciplinary history, regardless of whether it was posted on the ADC website.  Such a far-fetch defamation claim would almost certainly be dismissed as a matter of law.

Finally, as a matter of law, a defamation claim is not cognizable under § 1983.  *See Ellingburg v. Lucas*, 518 F.2d 1196, 1197 (8th Cir. 1975) ("[A] defamed person has not been deprived of any right, privilege or immunity secured to him by the Federal Constitution or laws of the United States."); *Underwood v. Pritchard*, 638 F.2d 60, 62 (8th Cir. 1981) ("[D]efamation, per se, is not actionable under section 1983.").

*like Proctor.  Branscumb v. Freeman*, 360 Ark. 171, 178, 200 S.W.3d 411, 416 (2004) (declining to infer private cause of action in light of "the plain language and the legislative history" of the statutes).  When the statute was enacted, it contained an emergency clause indicating the statute was motivated by "an alarming lack of transparency in the corrections system" *in order to protect public safety and to ensure that the public had information about inmates who would soon be considered for parole*.  Act 1265 of 2015, § 12.  Because § 12-27-145 was enacted *to protect the public*, it seems extremely unlikely that Proctor will be allowed to pursue a state law claim that he has a private cause of action against the Defendants who were responsible for "wrongfully" posting his disciplinary violations on the ADC website.

Because Proctor has failed to plead plausible constitutional claims arising from the alleged posting of his entire history of disciplinary violations on the ADC's public website, the Court recommends that those claims be dismissed, without prejudice.[8]

### D.    Attorney's Ethical Violations

Proctor claims that attorneys Jim DePriest ("Mr. DePriest") and Christine Cryer ("Ms. Cryer") violated "ethical duties" in recommending to the Arkansas

---

[8] Although the Court has discussed the shortcomings of Proctor's state law claims, it is not necessary to rule on such claims.  Because Proctor's constitutional claims are subject to dismissal, the Court may decline to exercise jurisdiction over his state law claims.  *See Gibson v. Weber*, 433 F.3d 642, 647 (8th Cir. 2006) (Congress unambiguously gave district courts discretion in 28 U.S.C. § 1367(c) to dismiss supplemental state law claims when all federal claims have been dismissed).

Parole Board that he was not entitled to a parole hearing. This allegation fails to state a claim for relief under either federal or state law. In their role as the attorneys for the Arkansas Parole Board, Mr. DePriest and Ms. Cryer owed Proctor *no ethical duty of any kind*.

Accordingly, the Court recommends that this claim be dismissed for failure to state a plausible claim for relief.

### E.    COVID-19 Related Claims

Proctor alleges that Defendants are being deliberately indifferent by failing to adequately protect him from the risks posed by COVID-19. While Proctor does not claim to have contracted the virus, he claims to be suffering "extreme physical discomfort, extreme emotional distress and duress, extreme mental anguish, extreme depression, extreme humiliation. . . [and] fear of death" because he is "surrounded by infected staff members and inmates." *Doc. 6 at 26*.

Many of Proctor's allegations about COVID-19 relate to other inmates and *their* potential claims, none of which can be pursued by Proctor.[9] Other allegations are patently unsubstantiated, far-fetched, and frivolous. For example, Proctor makes the leap that, because "multiple corrections officers" with whom he has direct

---

[9] "A prisoner cannot bring claims on behalf of other prisoners." *Martin v. Sargent,* 780 F.3d 1334, 1337 (8th Cir. 1985). Thus, Proctor cannot bring claims on behalf of other prisoners. Instead, Proctor may proceed only with claims he personally endured, and he must explain how he was personally harmed by the alleged constitutional violation. *Id.*

contact have "tested positive," "Defendants are deliberately conspiring to murder" him. *Doc. 6 at 11*.[10]

On their face, these fanciful and delusional claims by Proctor fail to come close to satisfying the pleading requirements set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that "labels and conclusions," a "formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement" are insufficient to plead a § 1983 claim; and instead, a prisoner must set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face"). Accordingly, Proctor's claim that the Defendants are conspiring to murder him by deliberately exposing him to COVID-19 should be denied.

Proctor also alleges that he repeatedly requested, but was denied, a COVID-19 test until he eventually received one on August 14, 2020. *Doc. 6 at 23, 25*. According to two Health Service Request Forms attached to Proctor's Complaint: (1) On April 22, 2020, Proctor demanded to be tested for COVID-19, claiming to be at high risk for death if he contracted the virus; and (2) On July 4, 2020, Proctor

---

[10] A complaint which contains factual allegations and legal conclusions "is frivolous where it lacks even an arguable basis in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint may be dismissed as frivolous if it is "based on an indisputably meritless legal theory," a "clearly baseless," or a "fantastic or delusional" factual scenario. *Id*. at 327-28.

complained that he suffered from a chronic ailment called "dyslipidemia" for which he was not receiving treatment.  *Id. at 28-29*.

In response to his request for a COVID-19 test, medical staff asked him to identify any symptoms he was experiencing that suggested he was infected.  *Id. at 28*.  In response to his complaints about his allegedly untreated "dyslipidemia," medical staff advised him that he had been taking a statin drug to treat his high lipids since October 5, 2010.  *Id. at 29*.  At most, these documents show that Proctor requested a COVID-19 test on one occasion, which was denied because he did not have any symptoms.  Further, by his own admission, Proctor received a COVID-19 test in August of 2020, which was negative.

To state a plausible claim that Defendants have failed to protect him from COVID-19, Proctor must allege facts suggesting:  (1) objectively, there was a substantial risk of serious harm;  and (2) subjectively, each of the Defendants were aware of the substantial risk of serious harm and knowingly disregarded it.  *Glaze v. Byrd*, 721 F.3d 528, 531 (8th Cir. 2013);  *see also Lenz v. Wade*, 490 F.3d 991, 995-96 (8th Cir. 2007) (providing that "a single incident, or series of isolated incidents" does not constitute a substantial risk of harm).  Proctor has failed to allege any facts to show that the medical decision to deny him a COVID-19 test on April 22, 2020, when he was asymptomatic, placed him at substantial risk of serious harm.  His remaining conclusory allegations are so vague and indefinite that they fail to support

any plausible constitutional claim related to how Defendants allegedly failed to protect him from COVID-19 or how the alleged delay in him receiving a COVID-19 test until August of 2020 (which showed he was negative for the virus) caused him any physical injury.

Finally, Proctor's pleading is also deficient because he has failed to plead facts to show how each named Defendant was personally involved in the alleged constitutional violations. *See Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009) (explaining that, to state a viable § 1983 claim, a prisoner "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution"); *Turner v. Mull,* 784 F.3d 485, 493-94 (8th Cir. 2015) ("This court has made clear that '[l]iability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights.'") (holding that prisoner failed to establish "the requisite level of involvement" as to officer who was "present, but not personally involved" in the cell search at issue).

Accordingly, the Court recommends that all of Proctor's COVID-19 related claims be dismissed for failure to state a plausible claim for relief.

### F.    Conspiracy Claim

Proctor makes the conclusory allegation that the Defendants entered into a conspiracy to deprive him of his constitutional rights. However, it is well settled that a conspiracy claim must be pled with sufficient specificity and factual support to suggest a mutual understanding between the defendants or a "meeting of the minds," as opposed to acting independently. *Cooper v. Delo,* 997 F.2d 376, 377 (8th Cir .1993); *Manis v. Sterling,* 862 F.3d 679, 681 (8th Cir.1988); *Smith v. Bacon,* 699 F.2d 434, 436 (8th Cir.1983).   The entirely conclusory allegations in Proctor's Complaint and Amended Complaint fall far short of kind of specific and factually supported allegations necessary to state a plausible conspiracy claim. Accordingly, the Court also recommends that this claim be dismissed, without prejudice.

## III.  Conclusion

IT IS THEREFORE RECOMMENDED THAT:

1.    Proctor's Complaint and Amended Complaint be dismissed, without prejudice.

2.    The Court CERTIFY, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting this Recommendation would not be taken in good faith.

14

DATED this 11th day of March, 2021.

_____
UNITED STATES MAGISTRATE JUDGE